RAFAEL SAURÍ ET AL., Plaintiffs and Appellees, *v.* WILLIAM W. WOOLARD ET AL., Defendants and Appellants.

No. 3915.   Argued November 12, 1926.—Decided April 29, 1927.

*Francisco Parra Capó, Manuel A. Rivera* and *Alberto S. Poventud* for the appellants.   *R. V. Pérez Marchand* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The object of this suit was the specific performance of a contract for the sale of land.   The court rendered judgment in favor of the plaintiffs, husband and wife.   One of the principal defendants named in the complaint was William W. Woolard who was formerly one of the owners of the land in question and was alleged to represent the other former

owners. Another defendant was Juan Serrallés Galiano who obtained the deed of the property from William W. Woolard and the other tenants in common through the agency of Juan Quesada and succeeded in having the property recorded in the registry. The said Quesada was the attorney in fact of the said former owners for the sale of the land and was made a party defendant.

Essentially, the theory of the complaint was that Quesada, the agent, before selling the property of his principals to Serrallés, had made a contract of sale with the plaintiffs which was confirmed by William W. Woolard. Necessarily, to deprive Juan Serrallés of this property, the plaintiffs were bound to prove that he had knowledge of the contract supposed to be perfected between the agents of Woolard et als. and the said plaintiffs. This duty they attempted to fulfill by charging that Serrallés, before the consummated sale to him, had knowledge of a complaint filed by the plaintiffs in this case against the various defendants. Indeed, it would appear that the plaintiffs at the time of the filing of their complaint were not aware of the recorded title in favor of Serrallés, so that to charge knowledge in the face of the record they had to reform their complaint.

Now, as Serrallés acquired this property before suit actually filed against him, it was necessary for the plaintiffs to show that the said Serrallés had acted in bad faith. The court below assumed the bad faith of Serrallés and did not set forth the facts from which such bad faith should be deduced. We have frequently decided that bad faith must be clearly proved.

Before the actual consummation of the sale in this case, according to Mrs. Saurí, one of the plaintiffs, she met Mr. Serrallés in Aibonito and, pointing to the property in question, she said: "See what a nice property I have." And he said: "I wish I owned it." Serrallés denied any recollection of having heard Mrs. Saurí make the remark. He

explained that at the time the supposed remark was made he was hurrying away. We are disposed to give credence to him when he says that he had no knowledge of the facts on which she was relying. Moreover, the remark did not tend to prove a consummated contract between the plaintiffs and some of the named defendants. It was consistent with an intention on the part of Mrs. Saurí to acquire the property which she already considered as hers. It did not charge the defendant Serrallés with knowledge or put him on notice. Even supposing that this remark tended to show that Mrs. Saurí had perfected a contract with Quesada, agent of some of the defendants, nevertheless the evidence is perfectly consistent with the fact that Quesada subsequently may have told Serrallés, whether it was true or not, that the contract with the Saurís had never been perfected.

Likewise the appellees in their brief draw attention to the supposed fact that Serrallés knew of the alleged sale between Woolard and the Saurís before he made his contract with Woolard through his authorized agent, Quesada. If the appellees mean that Mrs. Saurí made some other statement to Serrallés before the Saurís received a cable from Woolard, we find no such positive evidence in the record. Where several persons are trying to obtain the same property and one of them secures the purchase of it, if his title could be destroyed by such vague manifestations on the part of one of his rivals, the acquisition of property would be indeed rendered insecure.

On the other hand, if the appellees are relying on the cabled acceptance of the offer of the Saurís by Woolard and their showing the cable to Serrallés, another aspect of the question is presented. At that time the evidence convinces us Serrallés had made his offer to Quesada and the latter had accepted it in the name of Woolard. Woolard on the 4th of August by cable accepted the offer of Serrallés. It is after that date, perhaps properly from their standpoint ignoring the agent Quesada, that the Saurís sent a cable to

Woolard directly and received a reply from him accepting their offer.

The appellees place some reliance on this acceptance. There is a wide field of equity jurisprudence which permits a party to reform an instrument made under a mistake of fact. In the law, however, as we understand it, a party to a proposed contract may correct his consent to it, if given under a mistake of fact without first executing the contract and reforming it afterwards. The law does not require vain and useless things. It turns out that Woolard had received Serrallés' offer through Quesada without knowing who the proposed purchaser was and thought the cable of the Saurís was from the purchaser found by Quesada. When the matter was explained to him he left the whole sale in the hands of Quesada who in accordance with the understanding between himself and Serrallés took steps to complete the said sale to the latter. We have no question that Woolard was completely within his rights in withdrawing his cabled acceptance. Certainly no fraud in fact can be charged against Serrallés because the Saurís showed him their cable from Woolard.

We shall even go so far as to suppose that at the time of the cable of acceptance from Woolard to Saurí the transaction between Quesada and Serrallés had not been fully settled. Nevertheless, unless Serrallés absolutely knew of a perfected contract between Woolard and the Saurís, no fraud can be charged against him, not even the showing to him of the cable sent in error by Woolard. He was still entitled to induce Woolard directly or through Quesada to sell to him. The presumption in favor of honesty would enable a court to infer that Quesada assured Serrallés that he had the right to make the sale.

So that in the absence of any showing of fraud Serrallés has in his favor the provision of law that where a double sale is concerned, supposing there was such a thing, the

person who first succeeds in recording his title is definitely preferred. Civil Code, section 1376.

We have up to this point been treating the case somewhat as if Quesada, so far as he had the power, had completed a contract with the Saurís. The record does not convince us of this. That the Saurís in May made Quesada an offer and he agreed to transmit it by cable to Woolard is all that we find the evidence, as we read it, discloses. The authority of Quesada to bind Woolard at that date is not at all settled and the fact that he had to communicate with his principal tends to disprove his authority. Subsequently Quesada asked the Saurís for a written offer. This they did not furnish. That Woolard wanted a written offer from a proposed purchaser the subsequent cable from Woolard to them tends to show. Under this state of affairs there was nothing reciprocally binding on either Woolard or the Saurís. Neither could compel the consummation of the alleged contract.

We shall not greatly stress the fact that in all this Woolard was left absolutely free to do as he chose, barring of course the cable sent by mistake. There is nothing in the record to show that until August or September he gave Quesada full authority to sell. We do not find that Quesada tricked the Saurís. Even if he had, his conduct was not binding on Woolard, who was absolutely free to sell to Serrallés, as through agents he ultimately did sell. The rights of the plaintiffs, if any they had, were not against Serrallés or Woolard but against Quesada. In this connection, be it noted, the court below acquitted Woolard from all blame.

It is a somewhat unimportant detail, but with some bearing, that Woolard never gave a complete consent until he got full authority from the other principals. He possibly wanted a written offer because some court action was necessary.

The appellants have attacked the jurisdiction of the court below inasmuch as according to them the vendors, Woolard,

were never duly summoned or cited. We have no question that Woolard and his co-owners were never duly before the court. There was an attempted service on Quesada as agent of Woolard and the other vendors, but there is no showing that Quesada had authority to accept such service. However much he may have been the agent of Woolard otherwise, such a fact does not imply an authority to accept service.

The amended complaint before us, however, not only asked that Woolard and his co-owners or their agent be compelled to make a deed to the Saurís, but also that the defendants (probably meaning thereby Serrallés) turn over the possession to the plaintiffs. To comply with this the court found it necessary to order the cancellation in the registry of the deed from Woolard and the others to Serrallés, although not directly prayed for in the complaint. Thus the complaint takes on something of a complex character. Probably Woolard and the others could have been made parties by edicts, as the property was entirely located in the jurisdiction. As far as Serrallés was concerned the ultimate relief sought was that his ownership and record of the property be annulled. We are therefore loath to say that the District Court of Guayama did not have jurisdiction for any purpose and we have the idea that Serrallés, having been made to defend, ought to have a judgment in his favor that would be *res adjudicata* in so far as this court would be able to give such a judgment.

Therefore, we prefer, especially as the question does not appear to have been raised in the court below, to refrain from deciding definitely the alleged lack of jurisdiction for want of necessary parties. The judgment will have to be reversed and the complaint dismissed in either or any case, and it is so ordered.

Mr. Justice Hutchison took no part in the decision of this case.